**COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, DEPARTMENT FOR MEDICAID SERVICES, Appellant**

v.

**Michael BRATCHER, Appellee.**

**No. 2012–CA–002219–MR.**

Court of Appeals of Kentucky.

Jan. 10, 2014.

Case Ordered Published by Court of Appeals Feb. 21, 2014.

---

Carrie Cotton, Frankfort, KY, for appellant.

William S. Dolan, Kevin D. McManis, Frankfort, KY, for appellee.

Before COMBS, LAMBERT, and THOMPSON, Judges.

## OPINION

COMBS, Judge:

The Cabinet for Health and Family Services, Medicaid Services, appeals the order of the Franklin Circuit Court which reversed an order of the Cabinet. After our review, we affirm.

Michael Bratcher suffered a severe stroke at the age of fifteen. The stroke profoundly injured Bratcher's brain. His mother has cared for him throughout his life. Without her care, he would have had to be institutionalized. In 2005—when his mother was in her eighties, Bratcher was able to obtain assistance through the Supports for Community Living Services (SCL) program. SCL enables Bratcher to attend day-care and to receive therapy. His mother is now in her nineties; without SCL, she would not be able to care for him in her home.

After Bratcher began receiving SCL in 2005, he was re-certified every year until 2011. In 2011, the Cabinet denied Bratcher re-certification. Bratcher timely appealed, and the Cabinet held a hearing. On April 15, 2011, the hearing officer recommended that Bratcher should be re-certified for SCL. The Cabinet filed exceptions, and on March 16, 2012, the secretary entered a final order rejecting the recommendation of the hearing officer. Bratcher then appealed to Franklin Circuit Court. On December 4, 2012, the court

found that the Cabinet had exceeded its statutory authority and reversed the final order. This appeal follows.

When a court reviews the actions of an administrative agency, its primary inquiry is whether the agency has acted arbitrarily. *Bowling v. Natural Res. & Envtl. Prot. Cab.*, 891 S.W.2d 406, 409 (Ky.App.1994). (citations omitted). If three conditions are met, the agency's actions are deemed not to be arbitrary: 1) the agency has acted within its statutory powers; 2) the affected party was afforded due process; and 3) the agency's actions were supported by substantial evidence. *Id.* Because the circuit court determined that the Cabinet had acted outside its statutory powers, we are presented with a question of law. Thus, our review is *de novo. Western Kentucky Coca–Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790–91 (Ky.App.2001).

SCL is "funding from the Department for Medicaid Services to serve individuals with an intellectual disability or other developmental disabilities[.]" Kentucky Revised Statute[s] (KRS) 205.6317(1)(a). Requirements for the program are promulgated by the Department for Medicaid Services as administrative regulations. KRS 205.6317(5). Kentucky Administrative Regulation[s] (KAR) 907 KAR 1:145 is the regulation that governs SCL.

The underlying decisions in Bratcher's proceedings all turned on the definition of *developmental disability.* The Cabinet initially denied Bratcher's re-certification because his case manager had erroneously failed to check a box on a form that indicated he has a developmental disability. The Cabinet's physician reviewer determined that Bratcher is not developmental-

ly disabled because his Intelligence Quotient (IQ) is 88.

During his administrative review, the hearing officer determined that despite his IQ, Bratcher was developmentally disabled and that, therefore, he qualified for the program. The secretary disagreed, and the Cabinet's final order reflected the position of the secretary. The circuit court reversed the Cabinet's order denying SCL benefits to Bratcher.

For the purposes of the SCL program at the time of the circuit court's decision,[1] a developmental disability:

(a) Is manifested prior to the age of twenty-two (22);

(b) Constitutes a substantial disability to the affected individual; and

(c) Is attributable to mental retardation or related conditions that:

1. Result in impairment of general intellectual functioning and adaptive behavior similar to that of a person with mental retardation; and

2. Are a direct result of, or are influenced by, the person's cognitive deficits.

907 KAR 1:145(12).

A person has mental retardation if they [*sic* ] have:

(a) Significantly sub-average intellectual functioning;

(b) An [IQ] of approximately seventy (70) or below;

(c) Concurrent deficits or impairments in present adaptive functioning in at least two (2) of the following areas:

1. Communication;

2. Self care;

3. Home living;

4. Social or interpersonal skills;

---

1. The regulation has been changed. All references to the pertinent regulations are from the 2012 version.

5. Use of community resources;

6. Self-direction;

7. Functional academic skills;

8. Work;

9. Leisure; or

10. Health and safety; and

(d) Had an onset before eighteen (18) years of age.

907 KAR 1:145(23).

 We agree with and adopt as our own the sound reasoning of the circuit court:

> KRS 205.6317 ... specifically states that the [SCL] program is to serve individuals with an intellectual disability or other developmental disabilities. To give full effect to the General Assembly's intent in enacting this program, this Court must read the statute's conjunctive language.... 907 KAR 1:145 provides a definition for both "Developmental disability" and "Mental retardation." The definition for "Developmental disability" is not necessarily dependent on the "Mental retardation." The Cabinet's Final Order exceeded the Cabinet's statutory powers by requiring Bratcher to have, as a prerequisite to showing a developmental disability, an IQ of 70 or below. The requirement is written nowhere in the regulation governing and defining developmental disabilities.
>
> . . .
>
> The Cabinet exceeded its statutory powers by grafting the regulation's mental retardation IQ requirement onto the definition of developmental disability. There is no properly promulgated regulation which requires an individual who qualifies for the SCL Waiver on the basis of developmental disability to show first that he also meets the regulation's definition of mental retardation.

The Cabinet has not offered any legal authority that contradicts the logic of the circuit court. Its brief dwells on Bratcher's IQ, which is not solely dispositive when reviewed under the proper regulation. We also note that part of the Cabinet's argument is based upon the current wording of the regulation, which is different from the version that was relevant during the proceedings. The Cabinet also alludes to the lack of evidence, but the circuit court only addressed the question of law, not fact. The Cabinet did not argue the sufficiency of the evidence to the circuit court. Thus, the issue is not properly before us. *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976), *overruled on other grounds by Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010).

We affirm the order of the Franklin Circuit Court.

ALL CONCUR.